113   491
23a 232
113     491
103a  ¹406

EDSON A. DODGE

*v.*

THE PEOPLE, for use, etc.

*Filed at Springfield March 30, 1885.*

1.   JUSTICE OF THE PEACE—*as to the form or mode of pleading, in respect to various defences.*   No written pleadings are required in ordinary actions before justices of the peace.   All the allegations of the parties are presumed to be *oro tenus*, and their rights are to be determined from what is proved, rather than upon what is alleged or pleaded.

2.   If a village sues in its corporate name before a justice of the peace, a prior judgment of ouster in a *quo warranto* proceeding against it may be set up and relied on in abatement of the action, if the defence is set up in apt time before the justice; but no formal written plea is necessary.

3.   A dilatory defence in suits before justices of the peace must be made at the earliest opportunity, as is required in courts of record, by a formal plea, though it need not be in writing.   Such a defence can not be taken advantage of for the first time on an appeal.

4.   By express statute, no party to a suit before a justice of the peace is allowed to deny the execution or indorsement of any written instrument sued on, or offered as a set-off, unless such denial is made by affidavit.   But in such case no plea is required other than the affidavit itself.

5.   SAME—*on appeal—trial and jurisdiction.*   On an appeal from a justice of the peace to the circuit court, the case must be tried *de novo*, upon the proofs offered, without written pleadings; and the court trying the same will have no more extensive power or jurisdiction than the justice of the peace.

6.   MUNICIPAL CORPORATION—*effect of a judgment of ouster on quo warranto.*   The effect of a judgment of ouster on an information in the nature of a *quo warranto*, against a village and its board of trustees, is to immedi-

ately dissolve the corporation, whether it existed *de jure* or *de facto*, and work its dissolution, and take away all its rights, liberties, privileges and franchises.

7. Same—*effect of a dissolution on the power of its officers.* The dissolution of a municipal corporation by the judgment of the court on *quo warranto,* as in the death of a natural person, operates as an absolute revocation of all power and authority on the part of others to act in its name or in its behalf. After such civil death, its late treasurer has no power to demand or receive corporate taxes in the hands of the collector, in behalf of the corporation.

8. Tax collector's bond—*liability thereon—when action will lie.* The sureties upon a collector's bond are not liable on the same, except upon certain specified conditions, as, a failure to discharge his duties. There can be no recovery upon any official bond without showing a breach of one of its conditions. The safe keeping of tax money levied by a defunct village corporation until some one has a right to demand and receive the same, is no breach of the bond.

9. Money collected as village taxes, in the hands of a county collector, is not recoverable in an action upon his official bond, brought in the name of the People of the State, without any demand, except by the village treasurer, made after the dissolution of the village corporation, and where such collector has not been guilty of any breach of his bond.

Writ of Error to the Circuit Court of Jersey county; the Hon. George W. Herdman, Judge, presiding.

Messrs. Hamilton & Slaton, for the plaintiff in error:

The judgment of ouster in the *quo warranto* case conclusively and finally determines the rights as to all persons whomsoever, and may be given in evidence by the parties and others, without being pleaded. Dillon on Mun. Corp. sec. 725; Angell & Ames on Corp. secs. 195, 779; High on Legal Remedies, sec. 756; 2 Kent's Com. *307; *Life Association* v. *Fassett,* 102 Ill. 315.

Such judgment of ouster is the civil death of the corporation. See same authorities, and *Thornley* v. *Moore,* 106 Ill. 496.

As no party plaintiff could be substituted, the suit must abate. 1 Chitty's Pleading, *448, note 2.

The trial of the appeal was *de novo*, and no formal plea was necessary. When matters of record are pleaded in abatement, no verification is necessary. *Life Association* v. *Fassett*, 102 Ill. 315.

The money in appellant's hands belongs to the persons who paid it. "If it was in the appellant's hands without the authority of law, it is not recoverable at all, but belongs to the several tax-payers by whom it was paid." *Town of Virden* v. *Needles*, 98 Ill. 366.

A lawful judgment can not be rendered in favor of a dead plaintiff. *Riseley* v. *Fellows*, 5 Gilm. 531; *Brown* v. *Parker*, 15 Ill. 307; *Barbour* v. *White*, 37 id. 164; *Thornley* v. *Moore*, 106 id. 496.

In contemplation of law, all proceedings before justices of the peace are oral, and every defence which the defendant wishes to avail himself of is presumed to have been pleaded. *Comstock* v. *Ward*, 22 Ill. 249; *Williams* v. *Corbett*, 28 id. 263; *Wilson* v. *Bevans*, 58 id. 232.

Mr. GEORGE E. WARREN, and Mr. W. H. POGUE, for the defendant in error:

The death of a plaintiff, to defeat a judgment, must be pleaded in abatement. *Life Association* v. *Fassett*, 102 Ill. 315.

The organization of the village of Fidelity can not be questioned collaterally. *Osborn* v. *People*, 103 Ill. 228; *Village of Nunda* v. *Village of Chrystal Lake*, 79 id. 311; *Blake* v. *People*, 109 id. 504.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

It appears from the record in this case that the acting trustees of the village of Fidelity certified to the county clerk of Jersey county the sum of $250, to be extended by him as a tax, upon the collector's books, for the year 1882, upon the

taxable property within the limits of said village, which is situated in the town of Fidelity, and that the same was so extended. Of this sum there was $47.35 in the hands of Edson A. Dodge, as town collector of said town, on the 23d day of March, 1883, being the day on which this suit was commenced. Demand having been made upon Dodge for this sum by Warren Christopher, as village treasurer, and payment refused, the acting village authorities commenced suit against Dodge and his sureties on his official bond, before a justice of the peace, to recover the same. The village having recovered a judgment for the amount before the justice, Dodge, alone, took an appeal to the circuit court, where the cause was submitted to the court without a jury, and a final judgment entered therein, on the 21st day of November, 1883.

It was shown, by way of defence, on the trial, that at and before the commencement of this suit an information in the nature of a *quo warranto* had been commenced, and was then pending, in the circuit court of Jersey county, against the village of Fidelity and its board of trustees, requiring them, respectively, to show by what warrant or authority they assumed to act as a corporate body, etc., and that such proceedings were had in said cause that said circuit court, on the 2d day of April, 1883, entered therein a judgment of ouster, whereby and wherein the said village of Fidelity and its board of trustees were, severally, adjudged and declared to be ousted of all their corporate privileges and franchises under the laws of the State of Illinois, and that said judgment of ouster was in full force and effect at the time of the entry of the judgment in this case. The summons in the present case, as originally issued, ran simply in the name of the village, as plaintiff. After the evidence was all in, on both sides, the court permitted it to be so amended as to run in the name of the People of the State of Illinois, for the use of the village. Upon being thus amended, the court thereupon entered judgment, in the name of the People, for the use of the village, for

the amount of the penalty of the bond, against Dodge and his sureties, to be discharged upon the payment of said sum of $47.35.

Whether the court, upon the facts stated, was warranted in rendering this judgment, of course depends upon the effect that is to be given to the judgment in the *quo warranto* proceeding, as that is the only defence relied on. Neither the regularity of the *quo warranto* proceeding, nor the validity of the judgment entered therein, is at all questioned. The only question made by defendant in error is as to the manner in which the judgment in that proceeding was used in this, the contention being that the evidence was inadmissible, unless in support of a plea in abatement, and that there was no plea of that kind. That such a plea was necessary before the justice, will hardly be seriously contended. It is the settled construction of our statute relating to proceedings before justices of the peace, that no written pleadings are required. The allegations and counter-allegations of the parties, or their attorneys, are all presumed to be *oro tenus*, and their rights depend upon what is proved, rather than upon what is said or pleaded. In these courts, therefore, no technicalities are permitted to avail. If one having a meritorious cause is properly defeated, it will be because he has failed to make the necessary proofs, and not because he has made some mistake in the statement of his case. There is, however, this limitation upon the rights of the parties in this respect, viz: that dilatory defences must be made in apt time,—that is, at the earliest opportunity,—as is required when made in a court of record by a formal plea. (*Conley* v. *Good*, Breese, 135; *Byars* v. *City of Mt. Vernon*, 77 Ill. 467; *Huftalin* v. *Misner*, 70 id. 205.) Hence it was held in *Conley* v. *Good*, *supra*, that a defence of a dilatory character could not for the first time be taken advantage of in the circuit court, upon an appeal from a justice of the peace. There is also the further limitation that "no party to any suit before a justice of the

peace shall be permitted to deny the execution or any indorsement of any written instrument upon which suit shall be founded, or which shall be offered as a set-off or acquittance for the debt demanded in such suit, unless said denial be by affidavit of the party so denying the execution or indorsement thereof." This, however, is an express provision of the statute, (Rev. Stat. 1874, chap. 79, sec. 56,) and even here no plea is contemplated or required, other than the affidavit itself. It is hardly necessary to add, that upon an appeal from a justice of the peace to the circuit court, the case is to be tried *de novo,* upon the proofs offered by the respective parties, without written pleadings, the circuit court having no other or more extensive power or jurisdiction in disposing of the case than the justice had who tried it below. The proofs are heard and given effect precisely as if offered under appropriate and properly framed pleadings.

It clearly follows from what we have said, and the authorities above cited, there is nothing in the objection that the judgment in the *quo warranto* proceeding was not pleaded in abatement. It is sufficient that the proof was made in apt time, and this is not questioned, as the record clearly shows it was so made, both before the justice and the circuit court.

The question then recurs, what was the legal effect of that judgment upon the right to further proceed in the action which was then pending against Dodge and his sureties on his official bond? Before directly answering this question, it is proper to inquire what effect the judgment had upon the village itself. There is no room for doubt on this point. The authorities are clear that its immediate effect was to dissolve the corporation, whether it existed *de jure* or *de facto,*— or, in other words, its effect was to completely extinguish and annihilate the artificial municipal body which had theretofore existed by the name of the village of Fidelity, together with its rights, liberties and franchises. Or, differently stated, its effect was the immediate death of the artificial being, followed

by all the consequences which the law annexes to such a death.  As in the case of a natural person, its death operated as an absolute revocation of all power and authority on the part of others to act in its name or in its behalf.  By its death, therefore, the authority of the village treasurer to demand or receive money from the collector or any one else, on behalf of the village, was absolutely revoked, and it therefore follows, the sheriff could not, after such revocation of the treasurer's authority, have properly paid the money in dispute to him.  The money sought to be recovered was raised by a tax *prima facie* valid, and was received by Dodge in his official character as collector.  It was legally and properly received by him, and he and his sureties became liable on his official bond for its safe keeping, and payment to those having a legal right to receive it.  But until some one having such right demanded it of him, it was simply his duty to safely keep it. Whether, by reason of the fact the village of Fidelity never had any valid organization, as was adjudged by the court in the *quo warranto* proceeding, the tax-payers from whom this money was collected would have the right to recover it back, or whether, assuming the village at the time of its dissolution left creditors whose claims are unpaid, they may, by a proper proceeding in equity, reach this fund, are questions not involved in this suit, and about which we express no opinion.

As the legal title to all taxes, when collected, must be regarded as in the State, until applied to the particular purpose or purposes for which they have been levied and collected, we were at first inclined to the opinion that since the People, or the State, is the real plaintiff in the suit, and the collector, as between him and the State, is its mere custodian, the recovery below might be sustained on those grounds; but further reflection satisfies us this view is not tenable. If this were an action by the State for money had and received, against Dodge, alone, there would be much force in the position suggested; but even then the case would not be

32—113 ILL.

free from difficulties, not important to be discussed here, as no such case is before us. This suit is not to recover a simple money demand, as is clearly shown by bringing the action against Dodge's sureties as well as against Dodge himself. The evidence does not disclose the shadow of such a claim against the sureties. But waiving this, the judgment itself settles the question beyond all controversy. As is already shown, the judgment is rendered for the full penalty of the bond, to be discharged upon the payment of the damages, assessed at $47.35, and costs. The bond, then, being the foundation of the judgment, the question is presented, is it warranted by the evidence? It is hardly necessary to observe, the bond is not an absolute undertaking by the makers or obligors to pay money. The undertaking is, to pay upon a certain specified condition, namely, Dodge's failure to discharge his duties as collector. Unless there has been a breach of this condition, it is clear the judgment was unauthorized, for there can not be a recovery upon an official bond, in any case, without proving a breach of the condition. No such breach has been shown in this case, and the only one claimed is Dodge's refusal to pay over the money in question to the so-called treasurer of the defunct village, after his authority to demand or receive it had been completely revoked, as we have heretofore fully shown. This was no breach of his bond.

The judgment of the court below is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*Judgment reversed.*

SCOTT and CRAIG, JJ., dissenting.